Matthew Bourhis (SBN 319382)
Ritsa Gountoumas (SBN 316713)
BOURHIS LAW GROUP, PC
1808 Wedemeyer Street
San Francisco, CA 94129
Telephone: (415) 392-4660
Facsimile: (415) 421-0259
Email: matthew.bourhis@bourhislaw.com
        ritsa.gountoumas@bourhislaw.com

Robert B. Carey (*pro hac vice forthcoming*)
John M. DeStefano (*pro hac vice forthcoming*)
E. Tory Beardsley (*pro hac vice forthcoming*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
Facsimile:  (602) 840-3012
Email: rob@hbsslaw.com
        johnd@hbsslaw.com
        toryb@hbsslaw.com

Attorneys for Plaintiff HENRY KAMALI, M.D.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| HENRY  KAMALI,  M.D., individually and on behalf of others similarly situated,<br><br>    Individual    and    Representative Plaintiff,<br><br>    v.<br><br>GUARDIAN LIFE INSURANCE COMPANY OF AMERICA and DOES 1-10,<br><br>    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1.  **BREACH OF CONTRACT**<br>2.  **VIOLATION OF CALIFORNIA CIVIL CODE § 3345**<br>3.  **BAD FAITH BREACH OF CONTRACT**<br>4.  **VIOLATION OF CALIFORNIA B&P CODE § 17200 *et seq.***<br>5.  **DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

I.     NATURE OF THE CASE ......................................................................... 1

II.    PARTIES AND JURISDICTION............................................................. 3

III.   VENUE .................................................................................................... 3

IV.   GENERAL ALLEGATIONS AS TO CALIFORNIA LAW ................... 4

      A.    Disability insurers in California must not define Total Disability in a manner that bars coverage merely because the claimant is working. ................................. 4

V.    FACTUAL ALLEGATIONS ................................................................... 6

      A.    Defendant issues disability insurance policies that require the claimant not be working in any occupation in order to be Totally Disabled.................................... 6

      B.    Dr. Kamali purchased long-term disability insurance from Defendant, filed a Total Disability claim, which Defendant approved, and after five years, Defendant terminated the claim based solely on the no-work requirement.......... 7

VI.   CLASS ACTION ALLEGATIONS ....................................................... 10

FIRST CAUSE OF ACTION (BREACH OF CONTRACT)........................................ 13

SECOND CAUSE OF ACTION (VIOLATION OF CAL. CIV. CODE § 3345)....................... 14

THIRD CAUSE OF ACTION (BAD FAITH BREACH OF CONTRACT) ............................ 15

FOURTH CAUSE OF ACTION (VIOLATION OF THE BUSINESS AND PROFESSIONS CODE § 17200) ......................................................................... 17

FIFTH CAUSE OF ACTION (DECLARATORY AND INJUNCTIVE RELIEF) ................... 19

PRAYER FOR RELIEF ...................................................................................... 19

DEMAND FOR JURY TRIAL ............................................................................. 20

1

## I.    NATURE OF THE CASE

2       1.      Under California law, disabled claimants have certain rights that cannot be waived

3   or modified by the terms of an insurance policy. Specifically, California law requires insurers to

4   comply with the minimum disability coverage standards established by law since the 1940s,

5   which have been repeatedly affirmed by decades of jurisprudence. When the claimant meets the

6   definition of "Totally Disabled" under California law—which is based solely on the claimant's

7   *capacity* to work in his or her own occupation—the claimant is entitled to the benefits specified

8   in the policy.

9       2.      Despite this legal requirement, Guardian Life Insurance Company of America

10  ("Defendant") has repeatedly violated these rights by imposing a policy definition of Total

11  Disability that fundamentally and flagrantly fails to meet California's minimum coverage

12  requirements.[1]  Instead of looking at the claimants' capacity to work in their own occupation,

13  Defendant has required claimants *to be unemployed* to qualify for disability benefits.

14  Defendant's conduct violates well-established California law and public policy objectives that

15  seek to promote greater inclusion of individuals with disabilities in the work force. As a result of

16  Defendant's no-work requirement, many individuals who are "Totally Disabled" under

17  California law have been wrongfully denied and underpaid benefits or deterred from entering the

18  work force for fear of losing their benefits. They are penalized for participating in society and

19  for attempting to live more productive and fulfilling lives as individuals with disabilities.

20      3.      California law does not allow insurers to require disabled claimants to be not at

21  work in any occupation, to qualify for disability benefits. California courts have consistently held

22  that the common law definition of Total Disability controls, and supersedes any narrower

23  definition in an insurance policy.[2] Any policy that does not comply with California's minimum

24

25  [1] *See* Exhibit A, Plaintiff Kamali's policy at PDF page 8 (policy page four).

26  [2] *Erreca v. W. States Life Ins. Co.*, 19 Cal. 2d 388, 396 (1942). Defendant's policy language
    violates California law both under common law standards for "general" disability coverage (also
    known as "Any Occupation" coverage) and "occupational" coverage (also known as "Own
    Occupation" coverage). Requiring claimants to not work violates well-established California law
27  and important public policy objectives. California courts routinely reject efforts by insurance
28  companies to impose oppressive requirements for Total Disability in California because the

coverage requirements must still afford coverage to individuals who meet the legally prescribed definition of Total Disability, regardless of any policy language to the contrary.

4. Defendant's imposition of a no-work requirement on its disabled insureds, which violates California law, has resulted in wrongful denials and underpayments of disability benefits to many claimants. Defendant's misrepresentation of the enforceability of this requirement to its policyholders further compounds the violation by misleading insureds about their rights to benefits and their ability to seek employment if they desire.

5. Defendant has used and continues to use the "not at work in any occupation" language in its insurance policies to deny legitimate disability claims. On a systematic basis, Defendant admits the insured is Totally Disabled under the proper standard of disability, for a given period of time (five years, for example), and then terminates benefits when the no-work requirement purportedly applies. Defendant summarily denies claims solely on the basis that the claimant is working.

6. Defendant's systemic refusal to pay the benefits due to insureds who meet California's definition of Total Disability violates California law as well as the insurance policies, properly construed. It is a bad faith breach of contract, a willful violation of established law, and an unfair, unlawful, and deceptive business practice.

7. Plaintiff brings this class action on behalf of himself, and all individuals insured by Defendant in California under a disability policy containing the no-work requirement (or materially similar language) from the earliest allowable time to the date judgment is entered, who made a claim for disability benefits and whose benefits were denied or discontinued because they are working.

8. Plaintiff seeks for himself, and the class, compensatory damages, punitive damages, attorney's fees, declaratory relief, injunctive relief, and any other relief this Court deems appropriate.

---

*Erreca* definition of Total Disability supersedes any narrower definition in an insurance policy. *Austero v. Nat'l Cas. Co.,* 84 Cal. App.3d 1 (1978). In both Any Occupation and Own Occupation insurance policies, when insurers have required California claimants to not be working, courts have held such no-work requirements to be unenforceable.

## II.    PARTIES AND JURISDICTION

9.    Plaintiff HENRY KAMALI, M.D. ("Dr. Kamali" or "Plaintiff"), is a California resident residing in Los Gatos, California.

10.    Defendant GUARDIAN LIFE INSURANCE COMPANY OF AMERICA ("Guardian"), is an insurance company licensed to do business and doing business in California, selling long-term disability insurance.

11.    The below causes of action for Breach of Contract, Bad Faith Breach of Contract, Violation of Business and Professions Code § 17200, and Violation of California Civil Code Cal. Civ. Code § 3345 create civil actions arising under the laws of the State of California.

12.    This Court has personal jurisdiction over Defendant because, among other reasons, the policy of insurance issued by Defendant: (a) insured an individual who resides within this State and this judicial district; (b) was issued by Defendant who regularly transacts business in this State and is licensed to do business in this State; (c) was wrongfully administered by Guardian; and (d) provides that Guardian shall submit to the jurisdiction of a court of competent jurisdiction in the United States.

13.    This Court has jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy (including the value of both the disputed claim and attorneys' fees incurred to date) exceeds $75,000, exclusive of costs and interest, and Plaintiff and the Defendant are citizens of different states. This Court also has jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists. Plaintiff is a citizen of California and Defendant is a citizen of New York (where Guardian is incorporated and has its principal place of business).

### III.    VENUE

14.    Venue is proper under 28 U.S.C. § 1391 in that a substantial part of the events giving rise to claims arising from the incident described herein occurred within this District and the disability insurance policies were issued in this District.

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

## IV.    GENERAL ALLEGATIONS AS TO CALIFORNIA LAW

**A.    Disability insurers in California must not define Total Disability in a manner that bars coverage merely because the claimant is working.**

15.    Under California law, an insurer's definition of "total disability" is unenforceable to the extent it requires the insured to not be working (a "no-work requirement").

16.    California courts oppose strict adherence to a highly limited definition of Total Disability in occupational disability policies. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1006 (9th Cir. 2004).

17.    As the California Supreme Court held in *Erreca*, 19 Cal. 2d at 396, "The term 'total disability' does not signify an absolute state of helplessness but means such a disability as renders the insured unable to perform the substantial and material acts necessary to the prosecution of a business or occupation in the usual or customary way." Defendant imposed a no-work requirement that demands the claimant not be working at all, regardless of whether the work is full-time, part-time, gainful, or suitable for the insured based on his or her education, training, experience, and station in life. This is a violation of California law.

18.    "Total Disability" in an Own Occupation policy means that the claimant is unable to perform the substantial and material duties of his or her specific occupation in the usual and customary manner with reasonable continuity. *Hangarter*, 373 F.3d at 1006.

19.    Accordingly, when a disability policy includes a no-work requirement the courts have assigned a commonsense interpretation to the term "Total Disability" in accordance with the common law standards in *Erreca* and its progeny. *Hangarter*, 373 F.3d at 1006.

20.    As *Erreca* and *Hangarter* make clear, a definition of Total Disability must assess the ***capabilities*** of the insured, rather than his or her employment status. Insurers must assess the insured's capability to perform certain work duties in his or her ***own profession,*** or ***any occupation*** that is gainful and suitable for the insured based on their education, training, experience, and station in life, in the usual and customary manner and with reasonable continuity. When a policy fails to adhere to this minimum coverage standard imposed by California law, the provision, as written, is unenforceable.

21.    The policy's no-work requirement fails to meet this minimum standard of coverage. *See, e.g., Erreca,* 19 Cal. 2d 388 at 395 (under "any occupation" policy, "it would be equally unreasonable to hold that a doctor, lawyer, or business executive is not totally disabled from engaging in 'any occupation' or from performing 'any work' because he is able to run a news stand or work as a day laborer"); *see also Wible v. Aetna Life Ins. Co.,* 375 F.Supp.2d 956, 970 (C.D. Cal. 2005) ("[T]he ability to work sporadically or part time is an insufficient ground on which to deny benefits under a 'total disability' policy."); *Wright v. Prudential Ins. Co. of Am.,* 27 Cal. App. 2d 195, 216 (1938) (actual attempts to return to work, over a two-year period, did not render a person less than totally disabled).

22.    Instead of assessing the capabilities of the insured, a no-work requirement bars coverage based solely on whether the claimant is working, rather than the claimant's capability to perform the substantial and material duties of an occupation in the usual and customary manner and with reasonable continuity.

23.    Because the definition of "Total Disability" cannot depend solely upon work status, a coverage provision to that effect is contrary to California law and is unenforceable.

24.    Further, as a matter of public policy, to allow insurers to enforce a no-work provision would discourage disabled claimants from working at all, because if they worked, they would lose their disability insurance benefits. California courts have made clear that individuals with disabilities should not be precluded from receiving disability insurance benefits simply because they work (in their admirable attempt to participate in the workforce), whether it is a clinical doctor who becomes a business administrator or a dentist who becomes a part-time teacher. The State of California has a strong interest in encouraging individuals with disabilities to work to the best of their ability. Requiring insurance companies to honor the fact that working people can be Totally Disabled is crucial as a civil rights matter for individuals with disabilities. "Should we accept the insurer's argument on this point, an injured employee would tend to remain at home. He could return to work only at the peril of forfeiting all future disability payments. Public policy dictates that an injured worker be encouraged to return to his job." *McMackin v. Great American Reserve Ins. Co.,* 22 Cal. App. 3d 428, 438–439 (1971).

## V.    FACTUAL ALLEGATIONS

**A.    Defendant issues disability insurance policies that require the claimant not be working in any occupation in order to be Totally Disabled.**

25.    Defendant issues long-term disability policies to insurance customers in California.

26.    According to its form policy (Form No. NC112, the "Policy"), the Policy provides what is known in the industry and under California law as "Own Occupation" coverage. (Exhibit A.) This covers the insured when he is unable to perform the substantial and material duties of his regular occupation in the usual and customary manner with reasonable continuity.

27.    The Policy provides for the payment of monthly insurance benefits to the claimant in the event he is disabled.

28.    The Policy also provides a waiver of premium payments from the insured in the event he is disabled.

29.    The Policy defines "Total Disability" as follows:

> **Total Disability**
> Until we have paid benefits for five years in the same claim, total disability means that, because of sickness or injury, you are not able to perform the major duties of your occupation.
>
> After that in the same claim, total disability means that, because of sickness or injury, you are not able to perform the major duties of your occupation and you are not at work in any occupation.
>
> Your occupation means the regular occupation (or occupations, if more than one) in which you are engaged at the time you become disabled.
>
> If your occupation is limited to a single medical specialty certified by the American Board of Medical Specialties or a single dental specialty recognized by the American Dental Association, we will deem your specialty to be your occupation.

30.    According to this definition, after benefits have been paid for five years, the "total disability" requirement is satisfied only if "you are not able to perform the major duties of your occupation *and you are not at work in any occupation*."

31.    After five years, the Policy requires the claimant not to work in any occupation in order to be eligible for Total Disability.

32.    Absent the unlawful "not at work in any occupation" requirement, the Policy would pay benefits beyond five years if the claimant is not able to perform the major duties of

his or her occupation.

**B.    Dr. Kamali purchased long-term disability insurance from Defendant, filed a Total Disability claim, which Defendant approved, and after five years, Defendant terminated the claim based solely on the no-work requirement.**

33.    Beginning in 2001, Dr. Kamali, a clinical anesthesiologist, purchased a long-term disability insurance policy from Defendant: Policy No. G9160280. A true and correct copy of the policy is attached as Exhibit A.

34.    In December 2016, Dr. Kamali was diagnosed with prostate cancer.

35.    Dr. Kamali underwent robotic laparoscopic radical prostatectomy with lymph node dissection in March 2017.

36.    In June 2017, PSA test results indicated that the cancer had metastasized. Dr. Kamali underwent a repeat robotic, laparoscopic surgery for extended lymph node dissection of accessible chains and tumor debulking. He then began anti-testosterone therapy with Casodex and Lupron, causing multiple side effects, such as insomnia, fatigue, urinary urgency/frequency, joint pain, and other impairments.

37.    In August 2017, Dr. Kamali began a course of intensity modulated radiation therapy, which caused nausea, cystitis and enteritis, compromised bowel and bladder control, and worsened insomnia and fatigue.

38.    Dr. Kamali's treating physician, board-certified urologist Shahram S. Gholami, M.D., diagnosed him with refractory urinary frequency, small bladder capacity, severe urinary frequency and urgency, nocturia frequency, fatigue, insomnia, hot flashes, and anemia and joint pain, among other serious impairments. Dr. Gholami opined that these conditions prevented Dr. Kamali from performing his occupation as a clinical anesthesiologist.

39.    Dr. Kamali filed a disability insurance claim under the policy in 2017. He submitted documentation to Defendant, including medical records, attending physician statements, progress reports, occupational information, and cooperated with several in-person and telephonic interviews.

40.    On June 27, 2017, Defendant deemed Dr. Kamali Residually Disabled and issued him a fraction of his benefits under Dr. Kamali's policy.

41.     Dr. Kamali appealed Defendant's denial of his Total Disability claim, asserting, among other things, that under California law he is Totally Disabled. On February 7, 2018, Dr. Kamali, through legal counsel, sent Defendant a written appeal stating that the claim is governed by California's common law definition of Total Disability that has been enforceable since the 1940's, as outlined above.

42.     Defendant was given notice that this is the minimum requirement for Own Occupation coverage in a California long-term disability policy.

43.     In response to Dr. Kamali's appeal, Defendant approved his Total Disability claim under the California definition of Total Disability.

44.     For several years, Defendant continued paying Dr. Kamali Total Disability benefits. Defendant requested and received periodic progress reports, which confirmed that Dr. Kamali's medical impairments and occupational restrictions and limitations are permanent. Defendant approved Dr. Kamali's Total Disability claim on the basis that he cannot perform the substantial and material duties of his own occupation in the usual and customary manner with reasonable continuity, and therefore satisfied the California definition of Total Disability.

45.     On May 25, 2022, Defendant informed Dr. Kamali that, effective June 1, 2022, he no longer meets the definition of Total Disability under the Policy because he is working as the Medical Director of Good Samaritan Hospital and as the CEO of G2 Anesthesia. In support of the denial, Defendant cited the following Policy language: "after five years of benefits have been paid total disability means that, because of injury or sickness, you are not able to perform the major duties of your occupation and you are not at work in any occupation."

46.     Dr. Kamali's legal counsel appealed Defendant's wrongful termination of his disability benefits on May 27, 2022. The letter notified Defendant that the law required it to apply California's common law definition of Total Disability and that the written policy unlawfully narrowed the test for Total Disability and failed to meet California's minimum standards for coverage by requiring that the insured not be working at all in order to continue receiving Total Disability benefits.

47.     On June 17, 2022, Defendant responded to Dr. Kamali's appeal and denied that

California's Total Disability definition applied to Dr. Kamali's claim. It asserted that after five years of benefits have been paid, the Policy transforms from Own Occupation coverage into Any Occupation coverage and is therefore enforceable.

48.    After five years, the Policy is still an Own Occupation policy, however, and must adhere to California's occupational coverage standards, namely that the insured is Totally Disabled if he or she cannot perform the substantial and material duties of his or her own occupation in the usual and customary manner with reasonable continuity. The "not at work in any occupation" requirement is not enforceable.

49.    Even if the Policy transforms from Own Occupation to Any Occupation coverage, the "not at work in any occupation" requirement still violates California's minimum coverage standards. "The primary teaching of *Erreca* is that even a general disability policy must take into account the individual's personal circumstances in determining his ability to work in 'any occupation.'" *Klees v. Liberty Life Assur. Co. Of Boston*, 110 F. Supp. 3d 978, 985 (C.D. Cal. 2015).

50.    Defendant terminated Dr. Kamali's benefits solely because he was working, with no regard to whether it was his own occupation or a different occupation, whether he worked in the usual and customary manner or with reasonable continuity, whether his current occupation is suitable for his station in life and capacity, and other factors. Defendant explicitly conditions liability upon a definition of Total Disability which prevents the claimant from performing any work whatsoever. To date, Defendant continues to withhold benefits owed to Dr. Kamali and requires monthly premiums from him to keep his policy in force. In doing so, Defendant rebuffed and discouraged Dr. Kamali's admirable attempts to participate in the work force as an individual with disabilities.

51.    Defendant has consciously disregarded Dr. Kamali's rights under California law. Defendant was well aware of Dr. Kamali's vulnerable medical condition and the unique challenges that could deter or dissuade him from pursuing legal action against Defendant to enforce his rights.

52.    As a result of the foregoing, Defendant caused damage to Dr. Kamali by inflicting

upon him physical pain, mental anguish, mental suffering, and emotional distress.

53.    In addition, as a result of the foregoing facts and circumstances, Dr. Kamali incurred costs and legal fees recoverable under California law in cases involving the unfair denial of covered insurance benefits.

54.    Defendant's coverage position is directly contrary to the interests of the insured and California law.

55.    Defendant has adopted and systematically adopts the "no-work" requirement even though this position is contrary to the law of California.

56.    Defendant has adopted and systematically adopts this coverage position and denies or delays payment while misrepresenting the terms of coverage to its insureds.

57.    Defendant has failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under its Policy and all other policy forms containing the no-work requirement.

58.    Defendant has unlawfully, unfairly, and fraudulently violated the rights of others by misrepresenting and manipulating its long-term disability coverage to underpay and terminate disability claims. Defendant has devised a coverage position that is misleading, unfair, deliberately inconsistent, and calculated to confuse and deceive consumers and their advocates.

59.    Defendant's actions are unlawful, unfair, and fraudulent for the reasons stated above.

60.    Defendant committed unfair or deceptive acts or practices against the disabled.

61.    Upon information and belief, Defendant's practices have cost consumers millions of dollars in losses as their claims go underpaid. Meanwhile, Defendant reaps massive, unjust profits by betraying the trust of its insureds.

## VI.    CLASS ACTION ALLEGATIONS

62.    Plaintiff brings this action individually and as a class action on behalf of the following Class:

> All individuals in California insured by Defendant under a long-term disability insurance policy containing the "not at work in any occupation" restriction (or any other language that restricts benefits based on a no-work requirement) from the earliest allowable time to the date judgment enters.

(collectively, the "Class"). Excluded from the Class is Defendant and any person, firm, trust, corporation, or other entity related to or affiliated with Defendant.

63.    This action is properly maintainable as a class action.

64.    While the exact number of Class members cannot be determined with specificity at this stage in the proceedings, a reasonable estimate of the size of the class would be at least hundreds of people. The exact number of Class members can, however, be readily determined through the business records of Defendant. The members of the Class are so numerous and dispersed throughout California (and, based on information and belief, likely several other states), that joinder of all class members is impracticable.

65.    There are questions of law and fact common to the Class and predominating over questions affecting any individual Class member. Based on the foregoing, common questions include the following:

> i.     Whether Defendant can deny claims based solely on a no-work requirement in its policies;
>
> ii.    Whether the no-work provision is enforceable by Defendant;
>
> iii.   Whether working in any occupation for any period of time is grounds for Defendant to deny Total Disability coverage;
>
> iv.    Whether Defendant had a reasonable basis to believe that the no-work requirement is enforceable;
>
> v.     Whether Defendant had a reasonable basis to believe that working in any occupation is legitimate grounds for Defendant to deny coverage;
>
> vi.    Whether Defendant underpaid and denied coverage under the no-work requirement;
>
> vii.   Whether Defendant breached its contracts with the Class members;
>
> viii.  Whether Defendant engaged in unfair or deceptive acts or practices;
>
> ix.    Whether Defendant violated California Business and Professions Code § 17200;
>
> x.     Whether Defendant committed unfair or deceptive acts or practices against

1      the disabled in violation of Cal. Civ. Code § 3345;

2          xi.     Whether Defendant misrepresented facts of insurance policy provisions

3                  relating to any coverage at issue;

4          xii.    Whether Defendant failed to adopt and implement reasonable standards for

5                  the prompt investigation and processing of claims arising under insurance

6                  policies;

7          xiii.   Whether, through the foregoing acts or practices, Defendant did not attempt

8                  in good faith to effectuate prompt, fair, and equitable settlements of claims

9                  in which liability has become reasonably clear;

10         xiv.    Whether, through the foregoing acts or practices, Defendant is guilty of

11                 oppression, fraud, or malice;

12         xv.     Whether the Class was injured by Defendant's practices;

13         xvi.    Whether Defendant's actions constituted bad faith;

14         xvii.   Whether Plaintiff and the Class are entitled to an award of compensatory

15                 damages;

16         xviii.  Whether Plaintiff and the Class are entitled to an award of treble damages;

17         xix.    Whether Plaintiff and the Class are entitled to an award of punitive

18                 damages;

19         xx.     Whether Plaintiff and the Class are entitled to an award of attorney's fees;

20                 and,

21         xxi.    Whether Plaintiff and the Class are entitled to declaratory and injunctive

22                 relief.

23     66.    Plaintiff has the same interests as all other members of the Class, and his claims

24  are typical of those of all members of the class. Plaintiff will fairly and adequately represent the

25  interests of the class members, and his claims are coincident with and not antagonistic to those

26  of other Class members.

27     67.    Plaintiff is committed to vigorously pursuing this action and has retained

28  competent class counsel experienced in disability law, insurance litigation, and class action

litigation.

68.     Class certification is appropriate because the common questions of law and fact enumerated above predominate over questions affecting only individual members of the class.

69.     A class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Plaintiff's counsel, highly experienced in insurance litigation and class action litigation, foresees little difficulty in the management of this case as a class action.

70.     Class certification is further appropriate because Defendant has acted, or refused to act, on grounds that apply generally to the Class. Accordingly, final injunctive relief, or corresponding declaratory relief is appropriate for the class as a whole. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class. This would consequently establish incompatible standards of conduct for the party opposing the Class.

## FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

71.     Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth herein.

72.     The Policies provide coverage for claimants experiencing Total Disability, and Plaintiff and members of the Class made claims that satisfy California's definition of Total Disability.

73.     Defendant chose to include in the Policies a coverage limitation (the no-work limitation), which conflicts with California's definition of Total Disability and therefore is not permitted by California law. The no-work limitation is not enforceable, and California's definition of Total Disability governs Defendant's coverage obligations. Defendant breached the contract by denying Total Disability claims of Plaintiff and the Class based on the unenforceable no-work limitation even though Plaintiff and the Class satisfied, and were therefore entitled to coverage under, the California definition of Total Disability.

74.    Defendant imposed unenforceable contractual obligations against Plaintiff and the Class that are less favorable to the insured than required by law. *See* Insurance Code §§ 10328 and 10390, *Galanty v. Paul Revere Insurance Company*, 23 Cal. 4th 368, 375 (Cal. 2000).

75.    Defendant's breaches and violations have caused damage to Plaintiff and the Class.

76.    As a direct and proximate result of said actions, Plaintiff and the Class have been injured and damaged in an amount to be determined according to proof at trial, including, but not limited to, such amounts for the present value of past and future policy benefits, cost of living adjustment, interest, past and future sums for waiver of premium, and other contractual benefits owed under the aforementioned contracts.

## SECOND CAUSE OF ACTION
### (VIOLATION OF CAL. CIV. CODE § 3345)

77.    Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth herein.

78.    California Civil Code § 3345 prohibits unfair or deceptive practices against disabled people.

79.    Plaintiff brings this action on behalf of, or for the benefit of disabled people, as defined in Section 3345.

80.    Defendant knew or should have known that its conduct was directed to the members of the class, who were disproportionately, if not exclusively, disabled.

81.    Defendant's conduct caused class members, who were disproportionately, if not exclusively, disabled, to suffer loss of principal employment, loss of source of income, substantial loss of property set aside for retirement, or for personal or family care and maintenance, substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of a disabled person.

82.    Class members, who were disproportionately, if not exclusively, disabled, were substantially more vulnerable than other members of the public to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and

they actually suffered substantial physical, emotional or economic damage resulting from the Defendant's conduct.

83.    Defendant committed unfair or deceptive acts or practices against the disabled.

84.    As a result of the aforementioned conduct, Plaintiff and the Class are entitled to recover treble damages against Defendant, as more fully set forth below.

### THIRD CAUSE OF ACTION
### (BAD FAITH BREACH OF CONTRACT)

85.    Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth herein.

86.    At all times herein relevant, Defendant was bound to and agreed to act in good faith and deal fairly with Plaintiff and the Class when it entered into the Policies and accepted premiums. Defendant thereby assumed a special relationship with quasi-fiduciary obligations to Plaintiff and the Class and agreed to abide by its said duties. *See McCormick v. Sentinel Life Ins. Co.*, 153 Cal.App.3d 1030, 1050 (1984) (recognizing quasi-fiduciary relationship between insurer and insured and particular purpose in disability insurance). Nevertheless, Defendant refused to do so. It failed to act and continues failing to act in good faith and deal fairly with Plaintiff and the Class and knowingly, deliberately, and willfully breached its obligations to insureds under California law.

87.    Defendant included within its Policies a no-work limitation that is unenforceable because it directly violates established California law and public policy. Defendant then adopted and implemented unfair claims handling practices and has used those unfair claims handling practices in its role as the claims administrator of the Policies.

88.    Acting unreasonably, without proper cause, and with full knowledge of the consequences where there was no genuine dispute as to coverage—even after counsel for Plaintiff expressly informed Defendant in writing that its no-work limitation was invalid and unenforceable—Defendant refused to provide Plaintiff and the Class with the benefits owed under the Policies and California law.

89.    Defendant, at all times herein relevant, knew that Plaintiff and the Class were

entitled to receive Total Disability benefits under their Policies. Nevertheless, it refused to pay what was owed.

90.     Defendant intentionally misrepresented to Plaintiff and the Class its obligations to the insured, pertinent facts, and the law applicable to his claim.

91.     Defendant did not attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability had become reasonably clear.

92.     Defendant failed to conduct a reasonable investigation and/or institute reasonable standards for the investigation of the applicable facts and law relating to Plaintiff's claim, ignoring governing caselaw, *Erreca v. W. States Life Ins. Co.*, 19 Cal. 2d 388, 396 (1942) and *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1006 (9th Cir. 2004), and the underlying, well-established public policy of the State of California favoring employment opportunities for people with disabilities.

93.     Defendant failed to seek out independent coverage advice regarding the law applicable to the claim, as is customary in the insurance industry.

94.     Defendant concocted a specious basis to deny the Total Disability claims of Plaintiff and the Class and withhold benefits, knowing full well that it is required to honor his claim and pay benefits.

95.     Defendant consciously and deliberately misapplied California law and asserted a false, biased interpretation of the law that it knew was false to boost its profits and deny legitimate disability claims.

96.     Defendant has engaged in despicable conduct carried on with a willful and conscious disregard of the rights of Plaintiff and the Class.

97.     In engaging in the conduct in question, Defendant misrepresented, concealed, and deceived Plaintiff and the Class about their rights under their long-term disability insurance policies with the intention of depriving them of their insurance benefits and otherwise causing them injury.

98.     In particular, Defendant violated California Insurance Code § 790.03(h)(1) and its implementing regulations, 10 CCR § 2695.1 *et seq.*, by knowingly misrepresenting the correct

definition of "Total Disability" to California claimants, including Plaintiff herein; Defendant used and employed the incorrect definition of "Total Disability" in order to refuse to effectuate prompt, fair, and equitable settlements of claims, including claims of Plaintiff and the Class, in which liability has become reasonably clear in violation of California Insurance Code § 790.03(h); at all times, Defendant's aforesaid acts have been knowing and intentional, and have occurred with such frequency as to constitute a general business practice.

99.     Defendant's conduct was oppressive, fraudulent and malicious.

100.    Defendant's claims practices described herein have caused and/or substantially contributed to the denial of the claims of Plaintiff and the Class and have substantially contributed to Defendant's ability to perpetuate the unlawful, fraudulent, and otherwise wrongful acts alleged herein.

101.    As a result of the aforementioned conduct, Plaintiff and the Class are entitled to recover exemplary or punitive damages against Defendant, as more fully set forth below.

102.    Wherefore, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter set forth.

## FOURTH CAUSE OF ACTION
### (VIOLATION OF THE BUSINESS AND PROFESSIONS CODE § 17200)

103.    Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth herein.

104.    California Business and Professions Code § 17200 (the "Unfair Competition Law") prohibits acts of "unfair competition" including "unlawful, unfair or fraudulent business act of practice."

105.    Defendant violated the Unfair Competition Law by violating the California Insurance Code (the "Code") § 790.03(h).

106.    Defendant violated the Unfair Competition Law when it denied Class members coverage under the "at work in any occupation" provision.

107.    Defendant violated the Unfair Competition Law by informing Plaintiff and Class members that their claims are barred by the "at work in any occupation" provision.

108.    Defendant acted without conducting a reasonable investigation into the existence and terms of coverage or establishing standards for such an investigation before delaying, underpaying, and/or denying coverage.

109.    Defendant violated the Unfair Competition Law when it did not effectuate prompt, fair, and equitable settlements of Class members' claims when liability had become reasonably clear.

110.    Defendant violated the Unfair Competition Law when it breached the covenant of good faith and fair dealing in settling claims as described above.

111.    Defendant's actions violate the unlawful prong of section 17200 because they violate California's express statutory and regulatory requirements and settled caselaw regarding insurance claims handling, including those set forth above.

112.    Defendant's numerous breaches violate the unfair prong of Section 17200 because they have resulted in a systematic failure to pay long-term disability claims as required by contract.

113.    Defendant's actions violate the unfair prong of Section 17200 because the acts and practices set forth above, including Defendant's use of an invalid insurance policy term, Defendant's misrepresentation of the benefits under insurance policies, and Defendant's failure to adequately investigate claims, offend established public policy, and because the harm it causes to consumers greatly outweighs any benefits associated with those practices. Defendant's actions also violate the unfair prong because they constitute a systematic breach of consumer contracts.

114.    Defendant has violated the fraudulent business practices prong of Section 17200 because the misrepresentations and omissions regarding the insurance policies and Plaintiff's rights under the Policy, including denying coverage based upon an invalid "at work in any occupation" provision were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

115.    To date, Defendant continues to violate the Unfair Competition Law by breaching its insurance contracts and the covenant of good faith and fair dealing as described above.

1

## FIFTH CAUSE OF ACTION
### (DECLARATORY AND INJUNCTIVE RELIEF)

2

116.    Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth

3

herein.

4

117.    Plaintiff brings this cause of action for himself and the Class seeking a declaration

5

that Defendant breaches the contract and California law through its denials, terminations,

6

underpayments, and delay of claims by those who maintain(ed) long-term disability insurance

7

with Defendant containing a no-work requirement (or other policy containing materially similar

8

language restricting the insured's rights based on work status), because California law does not

9

permit such a limitation and because Defendant acted unreasonably and without proper cause

10

where there was no genuine dispute as to coverage.

11

118.    This Court has the power to declare the rights of the Defendant's policyholders

12

including those who would be insured under such policies and who may suffer similar losses and

13

those who have suffered claims-related losses.

14

119.    Plaintiff, for himself and on behalf of the Class, seeks a declaration of rights under

15

the Defendant's Policy and any other policy form that contains a no-work requirement and seeks

16

a declaration of the rights and liabilities of the parties herein.

17

120.    Regarding Defendant's continuing unlawful practices, Plaintiff has no plain,

18

speedy, or adequate remedy at law, the interests of the parties favor an injunction, and an

19

injunction is in the public interest.

20

## PRAYER FOR RELIEF

21

**WHEREFORE**, Plaintiff prays for the following judgment:

22

A.    Declaring that this action is properly maintainable as a class action;

23

B.    An Order appointing Plaintiff as Class representative and appointing Plaintiff's

24

counsel to represent the Class;

25

C.    Declaratory relief;

26

D.    Injunctive relief;

27

E.    Punitive damages;

28

F.    Treble damages;

1  G.  Compensatory damages;

2  I.  An award of attorney's fees and costs, as provided by law and/or as would be

3 reasonable from any recovery of monies recovered for or benefits bestowed upon the Class; and,

4  J.  Such other and further relief as this Court may deem just, equitable, or proper,

5 including a designation that any unclaimed monies may go to the next best use.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of the claims asserted in the complaint so triable.

DATED:  May 26, 2023    BOURHIS LAW GROUP, PC

By: */s/ Matthew Bourhis*

Matthew Bourhis (SBN 319382)
Ritsa Gountoumas (SBN 316713)
1808 Wedemeyer Street
San Francisco, CA 94129
Telephone: (415) 392-4660
Facsimile: (415) 421-0259
Email: matthew.bourhis@bourhislaw.com
   ritsa.gountoumas@bourhislaw.com

Robert B. Carey (*pro hac vice forthcoming*)
John M. DeStefano (*pro hac vice forthcoming*)
E. Tory Beardsley (*pro hac vice forthcoming*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
Facsimile:  (602) 840-3012
Email: rob@hbsslaw.com
   johnd@hbsslaw.com
   toryb@hbsslaw.com

*Attorneys for Plaintiff HENRY KAMALI, M.D.*

EXHIBIT A

☐ **The Guardian Life Insurance Company of America**

☐ **Berkshire Life Insurance Company of America**
700 South Street
Pittsfield, MA 01201

**DUPLICATE/SPECIMEN POLICY DISCLAIMER**

Please check the appropriate company(ies). Any insurer checked above is herein referred to as the "Company."

*Berkshire Life Insurance Company of America is a wholly owned stock subsidiary of and an administrator for The Guardian Life Insurance Company of America. New York, NY*

This policy is a duplicate of the original policy, No. _____G9160280_____, dated _____November 6, 2001_____, with the following exceptions.

1. The typestyle and location of information in certain portions of this policy may be different from the originally issued policy.

2. The signatures of any company officers which appear on the duplicate policy may differ from those on the original policy if at the time the duplicate policy was produced, those company officers were not the same as when the original policy was issued.

3. The address of the company home office may be different from that on the original policy.



**GUARDIAN**

The Guardian
Life Insurance Company
of America

7 Hanover Square
New York, NY 10004

The Guardian hereby furnishes insurance to the extent set out in this policy. All of the provisions on this and the pages which follow are part of this policy.

**Secretary**

**President**

**You** means the person insured. **We** or **The Guardian** means The Guardian Life Insurance Company of America.

## NONCANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65

You may renew this policy at the end of each term until you are age 65. During that time, we cannot change the premium or cancel this policy.

## CONDITIONAL RIGHT TO RENEW AFTER AGE 65 ---
## PREMIUMS CAN CHANGE

After you are age 65, you may renew this policy at the end of each term as long as you are at work full time. There is no age limit. But you must be at work at least thirty hours each week for at least ten months each year.

Your premium will be at our rates then in effect for persons of your age and class of risk. We have the right to change such premiums on a class basis on any policy anniversary.

## NOTICE OF TEN DAY RIGHT TO REVIEW POLICY

You have ten days to review this policy from the date you receive it. Within that time, you can deliver or mail it to our home office or to any Guardian agent or agency for a prompt refund of all premiums. This policy will then be void from the start.

### Disability Income Policy

Participating

DUPLICATE POLICY

Form No. NC112

# S C H E D U L E   P A G E

INSURED- HENRY KAMALI                    POLICY NUMBER- G-916028

OWNER- HENRY KAMALI                      DATE OF ISSUE- 11/06/01

LOSS PAYEE- HENRY KAMALI

                                         TERM-  1  MONTH

OCCUPATION CLASS- 3    DATE OF BIRTH- 02/09/69    AGE AT ISSUE-  32

PREMIUM DISCOUNT CLASS- NON-TOBACCO USER

ANNUAL PREMIUM FOR:

```
    - BASIC BENEFITS                              -      $479.90.
    - RESIDUAL DISABILITY RIDER (RSDL-12E)        -       $60.00.
    - COST OF LIVING ADJUSTMENT RIDER (COLA-12F)  -       $94.60.
    - FUTURE INCREASE OPTION RIDER (FIO -12K)     -      $120.80.

                        TOTAL ANNUAL PREMIUM -      $755.30.
                               TERM PREMIUM -       $64.83.
                        -----------
```

        --- ELIMINATION AND ACCUMULATION PERIODS ---

    ELIMINATION PERIOD- 3 MONTHS      ACCUMULATION PERIOD-   7 MONTHS

SP112                    -11/05/01-              SCHEDULE PAGE 1

                                                 CONTINUED......

# DUPLICATE POLICY



POLICY NUMBER - G-916028

--- BENEFIT PERIOD ---

TO AGE 65 IF DISABILITY BEGINS BEFORE AGE 60
60 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 60 BUT BEFORE AGE 61
48 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 61 BUT BEFORE AGE 62
42 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 62 BUT BEFORE AGE 63
36 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 63 BUT BEFORE AGE 64
30 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 64 BUT BEFORE AGE 65
24 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 65 BUT BEFORE AGE 75
12 MONTHS IF DISABILITY BEGINS AT OR AFTER AGE 75

POLICY NUMBER – G-916028

--- TABLE OF BASIC BENEFITS ---

- MONTHLY INDEMNITY                                $1,000.

- CAPITAL SUM                                      $12,000.

--- TABLE OF OPTIONAL BENEFITS ---

THE RENEWAL PROVISION OF EACH OPTIONAL RIDER MAY DIFFER FROM THAT OF THIS
POLICY.  SEE EACH RIDER FOR DETAILS.

- RESIDUAL DISABILITY (FORM RSDL-12E)

- COST OF LIVING ADJUSTMENT (FORM COLA-12F)
      MAXIMUM INCREASE PERCENT –                   03 PERCENT.

- FUTURE INCREASE OPTION (FORM FIO -12K)
      TOTAL INCREASE OPTION    –                   $2,000.

--- BENEFITS AND PREMIUMS AFTER AGE 65 ---

IF YOU RENEW THIS POLICY WHEN YOU ARE AGE 65, WE WILL ISSUE A NEW SCHEDULE
PAGE AT THAT TIME.  BENEFITS WILL BE LIMITED TO THOSE SHOWN IN THE TABLE OF
BASIC BENEFITS ABOVE.

PREMIUMS FOR THIS POLICY MAY INCREASE ON RENEWAL AT OR AFTER AGE 65 AND WILL
BE AT OUR RATES THEN IN EFFECT FOR PERSONS OF YOUR AGE AND CLASS OF RISK.

SP112                       –11/05/01–                  SCHEDULE PAGE 3

**This policy is a legal contract between
you and The Guardian. READ IT WITH CARE.**

## INDEX

The major provisions of this policy appear on the following pages:

| | |
|---|---|
| Renewal provisions | Pages one, seven and eight |
| Exclusions and limitations | Page three |
| Definitions | Pages three and four |
| Benefit provisions | Pages four, five and six |
| Claim provisions | Pages six and seven |
| General provisions | Page nine |

| | Page |
|---|---|
| Accumulation period | three |
| Age | seven |
| Benefit period | three |
| Capital sum benefit | five |
| Consideration | nine |
| Dividends (participation) | nine |
| Effective date | nine |
| Election of directors | nine |
| Elimination period | three |
| Entire contract | nine |
| Grace period | seven |
| Injury | three |
| Legal actions | seven |
| Medical care requirement | four |
| Military suspension | eight |

| | Page |
|---|---|
| Misstatement of age | seven |
| Monthly indemnity | three |
| Notice of claim | six |
| Payment of claims | seven |
| Policy anniversary | seven |
| Presumptive total disability | five |
| Recurrent disability | five |
| Rehabilitation benefit | five |
| Reinstatement | eight |
| Sickness | four |
| Termination | eight |
| Time limit on certain defenses | nine |
| Total disability benefit | four |
| Total disability defined | four |
| Transplant and cosmetic surgery | six |
| Waiver of premium benefit | six |

Additional benefits, if any, are shown in the schedule page
and are described in the rider forms attached to this policy.

**If you have questions about your Guardian policy,**
please contact the appropriate department as indicated below:
If your question pertains to benefits, contact:
The Guardian Life Insurance Company of America
Disability Claims Department
7 Hanover Square, New York, NY 10004
Telephone Number 1-800-933-3301

If your question pertains to premiums and billing, contact:
The Guardian Life Insurance Company of America
Disability Policyholder Services
P.O. Box 26240, Lehigh Valley, PA 18002-6240
Telephone Number 1-800-933-3303

**If you are not satisfied after contacting The Guardian,** you may contact
the California Department of Insurance at the following address:
California Department of Insurance, Consumer Services Division
300 South Spring Street, Los Angeles, CA 90013
Telephone Number 1-800-927-4357

## EXCLUSIONS AND LIMITATIONS

**Normal Pregnancy Limitation**
We will not pay benefits for normal pregnancy or childbirth during the first 3 months of total disability or, the elimination period, if longer.

**Foreign Residency Limitation**
We will not pay benefits for more than twelve months during the lifetime of this policy when you are not a resident of the United States or Canada.

**Preexisting Condition Limitation**
We will not cover any loss that begins in the first two years after the date of issue from a preexisting condition.

A *preexisting* condition means a physical or mental condition:
> which was misrepresented or not disclosed in your application; and
> for which you received a physician's advice or treatment within two years before the date of issue; or
> which caused symptoms within one year before the date of issue for which a prudent person would usually seek medical advice or treatment.


## DEFINITIONS

**Accumulation Period**
The accumulation period is shown in the schedule page. It is a period of consecutive months that begins on the first day that you are disabled and during which the elimination period must be satisfied.

**Benefit Period**
The benefit period is shown in the schedule page. It is the longest period of time for which we will pay indemnity for continuous disability from the same cause.

**Elimination Period**
The elimination period is shown in the schedule page. It is the number of months for which we will not pay benefits at the start of a claim. You must be disabled, from the same cause or a different cause for this entire period. The days within this period need not be consecutive but they must occur within the accumulation period. Each month of continuous disability will be calculated from the date disability began to the same date in each subsequent month. For periods of disability that are less than one month, we will consider each day of disability to be 1/30 of a month.

**Injury**
Injury means accidental bodily injury which occurs while this policy is in force.

**Loss Payee**
You are the loss payee unless some other person is named in the schedule page. We will pay all benefits to the loss payee.

**Monthly Indemnity**
The monthly indemnity is shown in the schedule page. It is the amount we will pay for each month of total disability.

**Owner**
You are the owner unless some other person is named in the schedule page. The owner has the right to renew this policy; to request a change in benefits; to change the loss payee; to receive dividends, if any are declared; and to vote for our directors.

**Physician**
Physician means a person, other than you or a member of your immediate family, who is licensed to practice the healing arts, who is acting within the scope of his or her license, and who is not a loss payee or owner under this policy.

**Sickness**
Sickness means a sickness or disease which is diagnosed and treated while this policy is in force.

**Total Disability**
Until we have paid benefits for five years in the same claim, total disability means that, because of sickness or injury, you are not able to perform the major duties of your occupation.

After that in the same claim, total disability means that, because of sickness or injury, you are not able to perform the major duties of your occupation and you are not at work in any occupation.

Your occupation means the regular occupation (or occupations, if more than one) in which you are engaged at the time you become disabled.

If your occupation is limited to a single medical specialty certified by the American Board of Medical Specialties or a single dental specialty recognized by the American Dental Association, we will deem your specialty to be your occupation.

## BENEFIT PROVISIONS

**Total Disability Benefit**
When you are totally disabled we will pay the monthly indemnity as follows:
> - You must become totally disabled while this policy is in force.
> - You must remain so disabled for the length of the elimination period. No indemnity is payable during that period.
> - After that, monthly indemnity will be payable at the end of each month while you are totally disabled.
> - Monthly indemnity will stop at the end of the benefit period or, if earlier, on the date you are no longer totally disabled.

We will not increase the rate of monthly indemnity because you are totally disabled from more than one cause at the same time.

**Medical Care Requirement**
We will not pay benefits under this policy for any period of disability during which you are not under the care of a physician. Such care must be appropriate, according to generally accepted medical standards, for the condition which is causing the disability, and must be provided by a physician whose specialty is appropriate for your sickness or injury.

We will waive the medical care requirement during any claim under this policy upon reasonable proof that your sickness or injury no longer requires the regular care of a physician under prevailing medical standards. Such waiver will not restrict our rights under the provision of this policy called "Physical examinations."

**Fractional Month**
We will pay benefits at the rate of 1/30 of the monthly indemnity for each day for which we are liable when you are disabled for less than a full month.

**Waiver of Elimination Period**
We will waive the elimination period if you become disabled within five years after the end of a prior period of disability which lasted more than six months and for which we paid benefits.

**Recurrent Periods of Disability**
After the elimination period has been satisfied, we will consider recurrent periods of disability to be one continuous period of disability if they result from the same cause or causes and are not separated by a recovery of more than:
> 12 months if the benefit period is to age 65 or longer and recurrence occurs before age 60; or
> 6 months in all other instances, including recurrence at or after age 60.

If a recurrent period of disability arises from a different cause, we will consider your loss to be a separate and unrelated period of disability.

**Capital Sum Benefit**
The capital sum is shown in the schedule page. This lump sum is in addition to any other indemnity payable under this policy.

A capital loss means the entire loss of the sight in one eye, with no possible recovery; or the complete loss of a hand or foot by severance through or above the wrist or ankle. Such loss must result from sickness or injury.

If you suffer a capital loss while this policy is in force and survive it for 30 days, we will pay the capital sum for each such loss. But we will not pay for more than two such losses in your lifetime. If this policy has terminated, we will pay for a capital loss which results from an injury sustained while this policy was in force and which occurs within 90 days after the date of that injury.

**Presumptive Total Disability Benefit**
We will always consider you to be totally disabled, even if you are at work, if sickness or injury results in your total and complete loss of:
> the sight of both eyes; or
> the hearing of both ears; or
> the power of speech; or
> the use of two arms, or two legs, or one arm and one leg, in their entirety.

We will waive the unexpired part of the elimination period from the date of loss. We will pay the monthly indemnity each month while such loss continues from the date of loss to the end of the benefit period. You must give us satisfactory proof of loss. But you do not have to be under the continuing care of a physician.

**Rehabilitation Benefit**
If you enroll in a rehabilitation program while you are totally disabled, we will pay a benefit to meet some of the costs you may incur. All of the following conditions apply:
> We must agree to the program in writing before you enroll.
> The program must be a formal plan of retraining that will help you to return to work in your occupation.
> It must be directed by an organization or individual who is licensed or accredited to provide vocational training or education to persons who are totally disabled.
> We will pay only those costs which are not otherwise covered by health care insurance, workers' compensation, or any public fund or program.

**Transplant and Cosmetic Surgery Benefit**
If you are totally disabled because of:
> the transplant of a part of your body to another person, or
> cosmetic surgery to improve your appearance or correct a disfigurement,
we will deem you to be disabled as the result of sickness.

**Waiver of Premium Benefit**
If you are totally disabled for at least 3 months (or the length of the elimination period, if shorter), we will refund any premiums due and paid during that period. Then we will waive any later premium that falls due while you are continuously so disabled or within 3 months after you recover.

On each waiver, we will renew this policy for another term of the same length as that in effect when claim began. If that term was less than twelve months and you are still disabled and eligible for waiver on a policy anniversary, we will then change the term to twelve months.

You have the right to resume payment of premiums when you recover and the waiver of premium benefit ends. At that time, you can change the term back to its original length if you wish.

This waiver of premium benefit will also apply if monthly indemnity is payable because you have met the requirements of any of the provisions called Waiver of Elimination Period, Recurrent Periods of Disability, or Presumptive Total Disability Benefit.

Nothing in this provision will change the conditions for renewal after age 65 that require you to be at work full time.


## CLAIM PROVISIONS


**Notice of Claim**
You must give us notice of claim within 30 days after any loss which is covered by this policy occurs or starts, or as soon after that as is reasonably possible. Notice, with sufficient information to identify you, will be deemed notice to us if given to us at our home office, 7 Hanover Square, New York, New York 10004, or to an authorized Guardian agent.

**Claim Forms**
When we get your notice of claim, we will send claim forms for filing proof of loss. If we do not send you such forms within 15 days after your notice, you may submit a written statement within the time fixed in this policy for filing proof of loss, which proves the nature and extent of the loss for which claim is made.

**Time for Filing Proof of Loss**
We are liable for benefits at the end of each month while you are disabled beyond the elimination period until the benefit period ends or, if earlier, the date you recover.

You must give us proof of loss at our home office or at any agency office:

> for loss from disability within 90 days after the end of the period for which we are liable; and
> for any other loss within 90 days after the date of the loss.

If you cannot reasonably give us proof of loss within such time, we will not deny or reduce claim if you give us proof as soon as possible. But we will not pay benefits in any case if proof is delayed for more than one year, unless you have lacked legal capacity.

**Time of Payment of Claims**
Subject to due written proof of loss, we will pay all accrued indemnity for disability each month. Any amounts unpaid when our liability ends will be paid immediately after we receive due written proof of loss.

We will pay benefits for any other covered loss immediately after we receive due written proof of loss.

**Payment of Claims**
We will pay all benefits of this policy to the loss payee.

If you are the loss payee, any accrued benefits unpaid at your death will be paid to your estate.

If any benefit of this policy becomes payable to your estate or to a minor or incompetent person, we may pay such benefit, up to $1000, to any of your relatives by blood or marriage who we believe has a right to it. Any payment made in good faith under this provision will fully discharge The Guardian to the extent of such payment.

**Physical Examination**
We shall have the right and opportunity to have you medically examined at our expense when and as often as we may reasonably require while you claim to be disabled under this policy.

**Legal Actions**
No one can bring an action at law or in equity under this policy until 60 days after written proof has been furnished as required by this policy. In no case can an action be brought against The Guardian more than three years after written proof must be furnished.

**Misstatement of Age**
If your age has been misstated, the benefits will be what the premium paid would have bought at the correct age. If we would not have issued this policy at your correct age, there will be no insurance and we will owe only a refund of all premiums paid for the period not covered by this policy.

## PROVISIONS RELATING TO PREMIUM AND RENEWAL

**Age**
When we refer to a specific age--such as age 65--we mean your age as of the policy anniversary that first occurs on or after the birthday on which you attain that age.

**Policy Anniversary**
A policy anniversary is the recurrence each year of the date of issue.

**Premium and Grace Period**
The term premium is shown in the schedule page. Premiums are due on the first day of each term. You have a grace period of 31 days in which to pay each premium due after the first one.

This policy stays in force during the grace period. If you have not paid the premium by the end of the grace period, this policy will lapse at 12:01 AM the next day.

If you die, we will refund to your estate that part of any premium which applies to the period after your date of death.

**Termination of This Policy At or After Age 65**

If you are not at work full time at the end of any term when you are age 65 or older, except by reason of total disability, this policy will terminate.

Termination will not prejudice any claim for total disability:
> which begins while this policy is in force; or
> which begins within 31 days after the date of termination as the result of an accident that occurred while this policy is in force.

If we accept any premium after you are age 65, this policy will stay in force to the end of the term which that premium covers.

**Reinstatement**

If this policy has lapsed at the end of the grace period, you can still keep it in force by paying the first overdue premium within 45 days of the time it was due.

After that, you can apply to reinstate this policy by completing an application and paying all overdue premiums. If we approve your application, your policy will be placed back in force on the date of such approval.

But if we have not approved or refused your application in writing within 45 days after receipt of such application and overdue premium, this policy will be reinstated on that 45th day. If we refuse to place this policy back in force, we will refund your premium.

In any case, this policy will be reinstated on the date that we or our agent accept a premium and do not ask for an application.

The reinstated policy will cover only loss that begins after the date of reinstatement. In all other respects, you and we will have the same rights under this policy as before it lapsed, subject to any provisions endorsed on or attached to it in connection with reinstatement.

**Suspension During Military Service**

We will suspend this policy on the date you go on active duty in the military service of any country or international authority. Such duty will not include temporary active duty by reservists for military training that lasts 90 days or less. We will refund that part of any premium paid for the period of such suspension.

You can place this policy back in force without evidence of good health or earned income as of the date of your discharge. To do so, you must apply in writing and pay the premium, both within 90 days after active duty ends.

We will base your premium on your age and class of risk when this policy was first issued. If you were disabled on or before the date of discharge, you must have recovered for at least six months before we will cover a later disability from the same cause.

**Term Changes**

On any premium due date, you can change the term to twelve months or six months or three months. But we will not allow any change which would result in a premium not being due on a policy anniversary.

## GENERAL CONTRACT PROVISIONS

**Consideration**

We have issued this policy in consideration of the representations in your application and payment of the first term premium. A copy of your application is attached and is a part of this policy.

**Effective Date of Insurance**

Insurance takes effect on the date of issue for the term shown in the schedule page. Each term of this policy starts and ends at 12:01 AM standard time in the place where you live.

*Preliminary term:* If the schedule page shows a preliminary term and premium, this policy will be in force from the start of that period to the date of issue. All of your rights under this policy will begin on the first day of that term instead of on the date of issue. But this will not change the policy anniversary.

**Entire Contract; Changes**

This policy with its riders and attached papers, if any, is the entire contract of insurance. No change in this policy will be valid unless it has been endorsed on or attached to this policy in writing by the president, a vice president, or the secretary of The Guardian.

No agent has authority to change this policy or waive any of its provisions.

**Time Limit on Certain Defenses**

(a) After two years from the date of issue of this policy, no misstatements, except fraudulent misstatements, made by you in the application for this policy will be used to void the policy or to deny a claim for loss incurred or disability, as defined in this policy, that starts after the end of such two year period.

(b) No claim for loss incurred or disability, as defined in this policy, that starts after two years from the date of issue of this policy will be reduced or denied on the ground that a sickness or physical condition not excluded by name or specific description had existed before the date of issue.

**Conformity with State Laws**

Any provision of this policy which, on the date of issue, is in conflict with the laws of the state in which you reside on such date is hereby amended to conform to the minimum requirements of such laws.


## PROVISIONS RELATING TO MUTUAL INSURANCE


**Participation**

This policy will be entitled to participate in the divisible surplus of The Guardian. Dividends will be paid in such manner, under such conditions, and to such extent as our board of directors may from time to time determine.

**Election of Directors**

The annual election of directors is held at our home office on the second Wednesday in December. Owners of Guardian policies may vote for directors according to the insurance law of the State of New York. For details, write to the Secretary, 7 Hanover Square, New York, New York 10004.

# RESIDUAL DISABILITY RIDER

This rider is part of this policy and subject to all its conditions.

**Premium and Renewal**
The premium for this rider is shown in the schedule page. You may not renew this rider after you are age 65.

## POLICY AMENDMENTS

The provisions of the policy called "Exclusions", "Elimination Period" and "Waiver of Premium" are amended as follows:

**Exclusions**
We will not pay benefits for normal pregnancy or childbirth during the first 3 months of total or residual disability or, the elimination period, if longer.

**Elimination Period**
You may be totally or residually disabled to satisfy the elimination period under the benefit provisions of this policy or rider.

**Waiver of Premium**
You may be totally or residually disabled to meet the conditions for waiver of premium of this policy.

## DEFINITIONS

**Residual disability** means that you are at work and are not totally disabled under the terms of this policy but, because of sickness or injury your loss of income is at least 20% of your prior income.

Even if you have recovered from the sickness or injury that caused residual disability, we will continue to consider you residually disabled so long as your loss of income is still at least 20% of your prior income and the loss is the result of such sickness or injury.

**Residual indemnity** is a proportionate amount of the monthly indemnity for this policy.

**Income** means the compensation which you receive for work or personal services, after business expenses, but before any other deductions, as reported for federal income tax purposes. It includes salaries, wages, fees, commissions, bonuses, business profits, or other payments for your personal services, including pension and profit sharing contributions. If you are an owner of a closely held "C" corporation, income includes your proportionate share of the corporate taxable income, whether received or not.

Income does not include passive or unearned income from dividends, interest, rentals or royalties. It is not Adjusted Gross Income.

*Prior income* means your average monthly income for either the last full calendar tax year, or for the two calendar tax years with the highest earnings in the three years just prior to the date on which you became disabled, whichever is greater.

*Current income* means all income, as defined above, for each month while you are residually disabled. But we will not include income received for services rendered prior to the start of the period of disability in your current income.

*Loss of income* means the difference between your prior income and your current income.

Form No. RSDL-12E

**Expenses** mean the regular business expenses which you may deduct from gross earned income for federal tax purposes.

*Prior expenses* mean your average monthly expenses for the same period on which your prior income is based.

*Current expenses* mean your expenses in each month while you are residually disabled. During a claim under this rider, the current expenses you deduct from gross earned income may not exceed your prior expenses, except as adjusted by this rider.

## BENEFIT PROVISIONS

When you are residually disabled, we will pay the residual indemnity each month as follows:
> You must become totally or residually disabled before you are age 65 while this policy is in force.
> You must remain so disabled for the length of the elimination period. No indemnity is payable during that period.
> After that, residual indemnity will be payable at the end of each month while you are residually disabled.

### Computation of Residual Indemnity
Residual indemnity is determined by dividing (a) by (b) and multiplying by (c), where:
> (a) is loss of income;
> (b) is prior income; and
> (c) is monthly indemnity.

If you have a social insurance substitute rider, we will add the SIS benefit to the monthly indemnity in this equation in each month when the SIS benefit is payable.

### How Residual Indemnity is Determined
After the elimination period has been satisfied, the actual percentage of loss will apply for the first six months of residual disability. After that, we will compute your residual indemnity for each six month period on the average of your current income for the preceding six months.

We may agree to a shorter or longer period of averaging, or we may agree not to use averaging at all in computing your residual indemnity. However, once we have agreed on the method to be used in any given claim for residual disability, such method cannot be changed.

If averaging is being used, it will also be used in determining residual indemnity under the enhancements described below.

### Enhancements to Residual Indemnity
During the first six months in which residual indemnity is payable, we will deem your loss of income to be 50% of prior income or the percentage of loss, if greater.

If your loss of income is more than 75% of prior income, we will deem such loss to be 100%.

If your loss of income is less than 20% of prior income, we will continue to pay residual indemnity so long as such indemnity is at least $500.

### Adjustment of Prior Expenses
While you are disabled under this rider, we will adjust your prior expenses to reflect any increase in fixed expenses that you then incur under the terms of a lease or other contract which was in effect at the start of claim.

Form No. RSDL-12E

**Adjustment of Prior Income and Expenses Due to Inflation**

At the end of each twelve months in a continuous claim before you are age 65, we will adjust your prior income and prior expenses to reflect changes in the cost of living since the start of claim.

**Review date** means the recurrence each year of the date on which you were first disabled in the same claim.

**CPI-U** means the Consumer Price Index for All Urban Consumers, or any later replacement of it, as published by the federal Department of Labor.

**Index month** means the calendar month that fell ninety days before the date on which you were first disabled in the same claim.

On each review date in the same claim, we will adjust your prior income and prior expenses for use in the next twelve months by the actual percentage change in the CPI-U since the index month. We will make no change that would reduce those amounts below what they were at the start of claim.

**Proof of Loss**

We can require any proof which we consider necessary to establish your current and prior incomes. We have the right to examine all relevant records, including your personal, business and corporate federal tax returns, as often as we may reasonably require.

During claim under this rider, we can require that your accounting practices be the same as those which were in effect at the time you first became disabled.

**Termination of Residual Indemnity**

Residual indemnity will stop when the first of the following events occurs:

> your loss of income is no longer the result of sickness or injury; or
> your loss of income is less than 20% of prior income or, if lower, the residual indemnity becomes less than $500 a month; or
> the benefit period ends; or
> you become totally disabled; or
> you become age 65 in any claim which began before age 60.

**The Guardian Life Insurance Company of America**

**Secretary**

Form No. RSDL-12E

# COST OF LIVING ADJUSTMENT RIDER

This rider is part of this policy and subject to all its conditions.

**Premium and Renewal**
The premium for this rider is shown in the schedule page. You may not renew this rider after you are age 65.

## DEFINITIONS

**Review Date**
Review date means the recurrence each year of the date on which you were first disabled in the same claim.

**CPI-U**
CPI-U means the Consumer Price Index for All Urban Consumers, or any later replacement for it, as published by the federal Department of Labor.

**Original Index Month**
Original index month means the calendar month that fell ninety days before the date on which you were first disabled in the same claim.

**Current Index Month**
Current index month means the anniversary of the original index month immediately preceding the review date.

**Monthly Indemnity**
Monthly indemnity means the monthly indemnity of this policy in effect on the date that claim begins. We base all benefits for disability on the monthly indemnity.

## BENEFIT PROVISIONS

**Cost of Living Adjustment**
At the end of each twelve months in a continuous claim before you are age 65, we will adjust your monthly indemnity for the next twelve months to reflect any changes in the cost of living since the start of claim.

On each review date, we will compare the CPI-U for the original index month with the CPI-U for the current index month. If the CPI-U has gone up or down since the original index month, we will adjust the monthly indemnity for the next twelve months by the percentage change in the CPI-U.

Your adjusted indemnity may go up or down from year to year as the CPI-U rises or falls in relation to the original index month. But the adjusted indemnity will never be:
> more than the amount we would pay if the CPI-U had risen each year exactly by the maximum increase percent shown for this rider in the schedule page; or
> less than the monthly indemnity.

If you have a social insurance substitute rider, we will adjust the SIS benefit under the same conditions which apply to the monthly indemnity. But this will not change the conditions for payment of the SIS benefit.

Form No. COLA-12F

**When Adjustment Ends**
We will adjust the monthly indemnity on each review date until the first of the following events occurs:
> you are no longer disabled; or
> the benefit period ends; or
> you become age 65 in any claim which began before age 60.

We will make no further changes up or down in the monthly indemnity after you are age 65. However, if you are then disabled in a claim which began at or after age 60, the benefit period will be extended for the number of months shown in the schedule page. We will continue to make adjustments until the benefit period ends or, if earlier, you are no longer disabled.

## ADJUSTED INDEMNITY BEFORE AND AT AGE 65

**Adjusted Monthly Indemnity Before Age 65**
If your claim ends before you are age 65, we will then deem the monthly indemnity of this policy to be the increased amount, if any, created by this rider on the last review date before claim ended.

The increased indemnity will take effect on the date claim ended without an extra premium charge. We will base all benefits on that amount in any later claim which begins after such date before you are age 65.

This provision will apply at the end of each claim in which this rider operates to increase the monthly indemnity until you are age 65.

We will increase the SIS benefit, if any, in the same way. But this will not change any of the conditions of the social insurance substitute rider for benefit payment or renewal.

**Adjusted Monthly Indemnity at Age 65**
At the time you first renew this policy when you are age 65, you may choose one of the following amounts of monthly indemnity for all claims that begin after that date:
> the monthly indemnity shown in the schedule page; or
> the increased indemnity, if any, last created by this rider.

If you are disabled at age 65, you can make this choice at the time you first renew this policy after you recover.

We will base your premium after that on the amount of monthly indemnity you select. You must meet all the conditions in the provision on the first page of this policy for renewal after age 65.

The Guardian Life Insurance Company of America

Secretary

Form No. COLA-12F

# FUTURE INCREASE OPTION RIDER

This rider is part of this policy and subject to all its conditions.

**Premium and Renewal**

This rider will expire and no further premium will be due for it after you are age 55 or, if earlier, after you use your last option.

The premium for this rider on the date of issue is shown in the schedule page. Each time you use an option, we will reduce that premium in proportion to the amount of insurance you have bought.

**Exercising an Increase Option**

This rider gives you the right to buy more disability income insurance in future years in spite of any change in your health or occupation. We call the added insurance an increase option.

The increase option will be issued on a separate policy form which is most like this policy then in use in the place where you live or, at our choice, will be added to this policy.

The total increase option is shown in the schedule page. This is the maximum amount of monthly indemnity which you may buy under this rider on all option dates combined. Your option date each year is the policy anniversary.

Until you are age 45, you may buy all or part of the total increase option on any one option date. On and after age 45, you may buy up to one third of the total increase option on any option date.

**Exercising an Increase Option When Disabled**

We will allow you to exercise an increase option when you are disabled under this policy on an option date. The increase option will take effect immediately for the disability that exists on the option date. We will deem that you were first disabled on the date of issue of the increase option. You will then have to satisfy all conditions of the policy for payment of benefits, including any elimination period.

Your earned income for purposes of the increase option will be deemed to be your rate of earnings just before you became disabled under this policy.

If the premiums of this policy are waived on an option date, we will waive the premium of the increase option under the same conditions which apply to this policy.

**Conditions and Limitations**

All of the following conditions apply on any option date:

> You must apply in writing at least 30 days before the option date on which such increase will take effect. The required premium for the increase option must be paid at time of application if we are then requiring that such payment be made at that time. Otherwise, the premium must be paid when the increase option is issued.

> You do not have to give evidence of good health. But you must give us details of your income, employment and other insurance in force.

Form No. FIO-12K

> The increase option cannot have a shorter elimination period or a longer benefit period than this policy.

> We will not issue an increase option with less than $200 monthly indemnity.

> You may use a part of your total increase option to purchase a social insurance substitute benefit if we then offer such a benefit to new insureds.

> The monthly indemnity of the increase option, including any SIS benefit, may not exceed our published income rules for new insureds. These rules limit the total insurance which we will issue in relation to earned income. We will use the rules that applied on the date of issue of this policy, unless more liberal rules are then in effect.

> The increase option may include any residual disability benefit or cost of living benefit that is part of this policy if we are then offering such benefits to new insureds.

> Premiums for the increase option will be at our rates for your age and class of risk on the option date. In no case will your class of risk under the increase option be less favorable than under this policy.

> We may exclude any condition under the increase option which has been specifically excluded under this policy. We may also apply any special class rating which applies to this policy.


The Guardian Life Insurance Company of America

Secretary

Form No. FIO-12K

**THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA**
7 Hanover Square, New York, New York 10004

CM 72792

**APPLICATION FOR DISABILITY INCOME INSURANCE**

COMPLETE ONLY IN THE PRESENCE OF THE PROPOSED INSURED - PRINT all entries in ink. Any changes must be initialed by the proposed insured. ("You" means the proposed insured.)

**PART I - PERSONAL AND FINANCIAL INFORMATION OF THE PROPOSED INSURED**

1.  (a) Proposed Insured___HENRY_____KAMALI_____ (b) Male [✓] Female [ ]
            First      Middle Initial      Last

    (c) Birthdate████ (d) State of Birth: (country if not USA)_IRAN_____

    (e) Are you a US citizen? [✓] Yes [ ] No If no, what type of visa do you have?_____

    (f) Social Security Number____████████_____

    *If the owner or loss payee of this policy is other than the proposed insured, complete the following:*

    (g) _____ Soc. Sec. or Tax ID No._____
               Owner

    (h) _____ Soc. Sec. or Tax ID No._____
             Loss Payee

2.  (a) **RESIDENCE ADDRESS OF THE PROPOSED INSURED** (Do not use P.O. Box)

    Street___████████_____

    City___██ ██_____ State ██ Zip ████____

    (b) **BUSINESS ADDRESS OF THE PROPOSED INSURED** (Do not use P.O. Box)

    Employer_GROUP ANESTHESIA SERVICES_____

    Street___██ █ ████ █ █_____

    City___LOS GATOS_____ State CA Zip 95092____

    *If the proposed insured's residence or business address has changed within two years, complete the following:*

    (c) Former residence address ___████████████████

    (d) Former employer and UNIVERSITY OF CALIFORNIA—MEDICAL CENTER
        business address ___██ ████████████____

3.  (a) Do you have a driver's license? [✓] Yes [ ] No State(s) CA____
        If yes, give Driver's License Number(s) ___████████____

    (b) Within the past five years, have you been charged with and/or convicted of any motor vehicle moving violation or has your driver's license been suspended or revoked? [ ] Yes [✓] No If yes, explain:
    _____
    _____

4. **OCCUPATION OF THE PROPOSED INSURED**

(a) Occupation ___ANESTHESIOLOGISTS___          Job Title ___M.D.___

(b) Nature of Business ___MEDICAL SERVICES___

(c) Describe, **in order of importance**, all major duties of your occupation. Include all physical activities that are performed in connection with the major duties of your occupation.

| Description of specific duties | % of time devoted to each duty |
|---|---|
| PATIENT CARE | 100 |
| | |
| | |

(d) How many hours per week are you at work in this occupation? ___50___ hours.

(e) Number of years in this occupation ___3___ with this employer ___SINCE 7/01___

(f) Former occupation, if changed within two years _____

(g) Do you have any other part or full time jobs?     [ ] Yes   [✓] No
If yes, describe _____

(h) Do you supervise any employees? [ ] Yes   [✓] No  If yes, how many? _____full time _____part time

(i) If an owner, percentage owned _____%     Years owned _____

Type of business entity:     _____Sole Proprietor     _____Partnership     _____S Corp _____C Corp

_____Other (Describe) _____

Number of employees?     _____full time _____part time

(j) Have you ever had a professional license suspended, revoked, or is such license under review, or have you been disbarred?
[ ] Yes     [✓] No     If yes, explain: _____



**5.  OTHER INSURANCE COVERAGE ON THE PROPOSED INSURED**

| | |
|---|---|
| **Type of Insurance:** | DI = Disability Income    OE = Overhead Expense    BY = Buyout    MD = Medical |
| **Category:** | IND = Individual    G = Group    A = Association |
| **Status:** | 1 = Inforce    AP = Applied For, or Date of Eligibility |

(a) List all personal and business disability income insurance and all medical insurance now in force, applied for, or eligible for in all companies, including the Guardian. If none, check here: _____

| Insurer | Type: DI, OE, BY or MD | Category: IND, G or A | Status: I, AP or Date of Eligibility | Basic Monthly Indemnity | Social Insurance Benefit | Automatic Increase Option | Future Increase Option | Check if Employer Pays Premium |
|---|---|---|---|---|---|---|---|---|
| BERKSHIRE | DI | IND | I | $3500 | $ — | · % | $ 1500 | - |
| ER GRP HEALTH | MD | G | | $ | $ | % | $ | |
| | | | | $ | $ | % | $ | |
| | | | | $ | $ | % | $ | |
| | | | | $ | $ | % | $ | |
| | | | | $ | $ | % | $ | |
| | | | | $ | $ | % | $ | |

(b) Will the new Guardian policy replace any personal or business disability income insurance? [ ] Yes  [X] No
   If yes, list below.

*When issuing any insurance as a result of this application, the Guardian will rely on the fact that the proposed insured can and will permanently terminate the coverage listed below by the next premium due date following the delivery of the Guardian policy. If the coverage listed below is not terminated by the date shown or if it is terminated and later reinstated, any policy issued will be rescinded and all premiums will be returned. The Guardian may contact any listed insurer after the date shown to confirm that the coverage has been permanently terminated.*

| Insurer | Type: DI, OE or BY | Category: IND, G or A | Group or Association Name | Policy Number | Amount to be Replaced | Next Premium Due Date and Mode |
|---|---|---|---|---|---|---|
| | | | | | $ | |
| | | | | | $ | |
| | | | | | $ | |
| | | | | | $ | |
| | | | | | $ | |
| | | | | | $ | |

(c) Within the past five years, have you had disability income, accident, medical insurance or life insurance declined, postponed, modified, rated or cancelled?    [ ] Yes  [X] No

If yes, explain and give company name, dates and reason, if known:

_____

_____

## 6. PERSONAL FINANCIAL INFORMATION OF THE PROPOSED INSURED

*Earned Income* means the compensation that you receive for work or personal services, **after business expenses**, but before any other deductions, as reported for federal income tax purposes on IRS Form 1040. Earned income does not include unearned or passive income and it is not Adjusted Gross Income.

*Unearned or passive income* includes, but is not limited to, income from dividends, interest, investments, rentals, royalties, retirement plans or from business interests as an inactive owner.

Fill in the amounts that are shown on your federal income tax forms and supporting schedules. Do not enter any amounts that are not reported to the IRS. If IRS Form 1040 has not been filed for the year shown, explain in **Remarks section**. If a joint return, furnish appropriate financial documentation for the proposed insured.

*Explain* any special circumstances that may affect your earned income **in the Remarks section.**

|  | | Annualized Rate of Current Income Jan 1 - Dec 31 Year 2001 | Actual Filed Most Recent Calendar Year Jan 1 - Dec 31 Year 2000 | Actual Filed Two Calendar Years Ago Jan 1 - Dec 31 Year 1999 |
|---|---|---|---|---|
| (a) | **EARNED INCOME** | | | |
| 1. | **Salary or Wages** from Form W2 | $240000 P.A. | 42,000 | 39,000 |
| 2. | **Sole Proprietor Net Profit** from 1040 Schedule C | | | |
| 3. | **Share of Partnership or S Corp Non-passive Income** from 1040 Schedule E | | | |
| 4. | **Qualified Pension Plan contributions or Qualified Profit Sharing contributions or 401K contributions** that would cease if the proposed insured were disabled | | | |
| 5. | **Bonus, Commission or other Earned Income** from the occupation described in 4.(a) of **Part 1** (explain in **Remarks section**) | | | |
| 6. | **Other Earned Income** from any other full or part-time work (explain in **Remarks section**) | | | |
| | **TOTAL EARNED INCOME** (Must be completed) | $240,000 | 42,000 | 39,000 |
| (b) | **UNEARNED INCOME**, including passive income. If none, check here. [✓] None | | | |

(c) Has there been any fluctuations in income that exceed 20% of the prior year as described in item (a)?
[X] Yes  [ ] No  If yes, explain in **Remarks section**.

(d) **NET WORTH** Is your net worth greater than $4,000,000? [ ] Yes [X] No

If yes, describe your net worth in detail.  Show current asset value less liabilities.

|  | Assets | Liabilities | Net |
|---|---|---|---|
| Cash, savings, stocks and bonds | $ | $ | $ |
| Business | $ | $ | $ |
| Personal property | $ | $ | $ |
| Personal residence | $ | $ | $ |
| Other real estate | $ | $ | $ |
| Other | $ | $ | $ |
| **Total** | $ | $ | $ |

(e) Have you ever filed for personal or business bankruptcy? [ ] Yes [X] No
If yes, give full details and date of discharge in **Remarks section**.

(f) Are you covered by or eligible for a salary continuation plan? [ ] Yes [X] No
If yes, monthly amount $ _____ or % of income paid _____%.  Benefit period _____ months.

(g) **PREMIUM PAYMENT**
What part of the premium for this policy will your employer pay?    $ _____ or _____% None [ ]
How much of this premium will be included in your taxable income? $ _____ or _____% None [ ]

(h) Do you pay Social Security taxes (FICA or Schedule SE)? [X] Yes [ ] No
If no, explain: _____

**Remarks section** (Specify question number).

(6a) INCOME FROM UC → ~$25,550 (RESIDENCY) ; MOONLIGHTING INCOME FROM VA → $666
(6c) STARTED PRACTICE 7/01 - EXPECTS INCOME OF ~$200,000 P.A.

## PART IIA — HEALTH AND PERSONAL HISTORY OF THE PROPOSED INSURED
### (Complete even if medical examination is required)

7. (a) Height __5__ ft __10__ in

   (b) Weight __207__ lbs

   (c) Has there been a weight change of more than 15 pounds in the past year?  [ ] Yes    [✗] No
   If yes, explain: _____

   _____

8. In the last twelve months have you used tobacco in any form? [ ] Yes  [✗] No
   If yes, explain:_____

9. Within the past 10 years, have you had, been treated for or received counseling for:

   |   | Yes | No |
   |---|-----|----|
   | (a) high blood pressure, chest pain or disorder of the heart or circulatory system? | [ ] | [✗] |
   | (b) diabetes, cancer, tumor, or disorder of the glands, bone, blood or skin? | [ ] | [✗] |
   | (c) complications of pregnancy, infertility, or any disorder of the breasts, reproductive or genital organs, prostate, kidneys, or urinary system? | [ ] | [✗] |
   | (d) hernia, hepatitis or disorder of the liver, gall bladder, stomach, intestines or rectum? | [ ] | [✗] |
   | (e) arthritis, rheumatism, or disorder of the joints, limbs or muscles? | [ ] | [✗] |
   | (f) disorder or condition of the back, neck or spine? | [ ] | [✗] |
   | (g) allergy, asthma, sinusitis, emphysema, or disorder of the lungs or respiratory system? | [ ] | [✗] |
   | (h) epilepsy, stroke, dizziness, headache, or disorder of the brain or spinal cord? | [ ] | [✗] |
   | (i) disorder of the eyes, ears, nose or throat? | [✗] | [ ] |
   | (j) anxiety, depression, nervousness, stress, mental or nervous disorders, or other emotional disorder? | [ ] | [✗] |
   | (k) Chronic Fatigue Syndrome, Epstein Barr virus or Lyme disease? | [ ] | [✗] |

10. (a) Have you ever used stimulants, hallucinogens, narcotics or any controlled substance other than as prescribed by a physician?  [ ] [✗]
    (b) Have you ever had or been advised to have counseling or treatment for alcohol or drug use?  [ ] [✗]

11. Within the past 10 years, have you been diagnosed by or received treatment from a member of the medical profession for Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC)?  [ ] [✗]

12. (a) Are you currently taking prescribed medication?  [ ] [✗]
    (b) Are you currently taking non-prescription medication?  [ ] [✗]

13. Do you have any loss of hearing or sight, an amputation of any kind, or any physical deformity, impairment or handicap?  [ ] [✗]

14. Are you now pregnant?  [ ] N/A

15. Within the past five years, have you had a sickness or injury for which you have made a claim or for which you will make a claim?  [ ] [✗]

16. Within the past five years, have you had a physical examination or check-up of any kind; been advised to have surgery or any diagnostic tests that were not performed, except HIV tests; or consulted a physician, medical or mental health professional, counselor or other practitioner for any condition not listed in this Part IIA?  [ ] [✗]

17. Within the past twelve months, have you had symptoms of any condition listed in this Part IIA for which you have not sought medical attention or advice?  [ ] [✗]

Form No. AP2-96 CA

Explain in full all "yes" answers to questions 9 through 17 in the **Remarks section** below. Specify question number. Give diagnosis or symptoms, tests performed, dates, types and amounts of medication, length of disability, degree of recovery, and names and addresses of all physicians, medical or mental health professionals, counselors, practitioners or hospitals.

**Remarks section**

Q9I.  RETINAL DETACHMENT- RIGHT EYE  9/6/00-SURGICALLY REPAIRED.

NO COMPLICATIONS.  DR. ROBERT BHISITKUL DEPT OF OPTHALMOLOGY UCSF

400 PARNASSUS AVE STE A750  SAN FRANCISCO CA 94143 415/353-2402

18. Other than as previously stated on this application, list by name and address the physicians, medical or mental health professionals, counselors or other practitioners that you have consulted in the last 5 years. Give the date last seen and the reason for the consultation; the treatment given and the medication prescribed. **If none, so state.**

NONE

19. Within the last two years have you participated in any of the following avocations:

|  | Yes | No |
|---|---|---|
| (a) Piloting any type of aircraft? | [ ] | [✓] |
| (b) Mountain climbing? | [ ] | [✓] |
| (c) Scuba diving below 100 feet? | [ ] | [✓] |
| (d) Skydiving? | [ ] | [✓] |
| (e) Motor vehicle racing? | [ ] | [✓] |
| (f) Martial arts? | [ ] | [✓] |

If you have answered "yes" to any of the above questions, give details explaining your participation.

Form No. AP2-96 CA

## PART III — REPRESENTATIONS OF THE PROPOSED INSURED AND OWNER

[ ] No money has been paid as a deposit for disability income insurance with this application.

[✓] A deposit of $ 129.66 has been paid for:

   ( ✓ ) proposed personal disability income insurance in the amount of $ 1,000 per month; and/or

   ( ) proposed overhead expense disability insurance in the amount of $_____ per month;

in exchange for the receipt providing conditional coverage.

[ ] Additional disability income insurance has been applied for in the amount of $_____ but no deposit has been paid for this amount of insurance.

[ ] A list bill date or a special date has been requested and a deposit has been paid. In making this request, I understand that I may be waiving certain rights and guarantees under the conditional receipt given in exchange for my premium deposit.

I have read my answers to the foregoing questions. I declare that they were taken in the presence of the agent and are complete and true to the best of my knowledge and belief.

I understand and agree as follows:

1. This application (pages one through eight), any supplement to it, and Part II, if required, shall form a part of any policy issued. The Guardian will rely on all written statements in these pages if it issues a policy to me. Upon delivery of such policy, I will review it and if not satisfied, I will return it to the Guardian within 10 days of the date of delivery for a prompt refund of premium. Any misrepresentation or omission, if found to be material, may adversely affect acceptance of the risk, claims payment or may lead to rescission of any policy that is issued based on this application.

2. An agent cannot accept any person for insurance; nor waive a complete answer to any part of this application; nor make contracts; nor waive any other rights or requirements of the Guardian.

3. No information acquired by any representative of the Guardian shall bind the Guardian unless it shall have been set out in writing in this application.

4. No waiver or change in the terms of the policy applied for will be valid unless it is set out in writing and signed by the president, a vice president or a secretary of the Guardian in the home office.

5. If a premium has been paid for insurance in exchange for the conditional receipt bearing the same number as this application, insurance will be in force as set out in the terms of such receipt.

6. Except as provided in the conditional receipt, no insurance shall take effect unless and until: the policy has been delivered to and accepted by me; the full first premium has been paid during my lifetime; and there has been no change in my health, income level, status of employment or occupation from that shown in my application.

**Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.**

Signed at ___SAN MATEO, CA___, this __7th__ day of __OCT, 2001__ year ____

_____     _____
Signature of proposed insured          Signature of owner if other than proposed insured. If owner
                                       is a business entity, signature and title of authorized person.

                                       _____
                                       Title

I certify that I have taken this application in the presence of the proposed insured and that I have truly and accurately recorded on this application the information supplied by the proposed insured.

___Matthew A Pemberton___              ___0474403___
Signature of licensed agent            License Number(s)

___MATTHEW A. PEMBERTON___             ___CA___
Agent's Name                           State(s) where licensed

Page eight                             Form No. AB2 96 CA



Berkshire Life Insurance Company
700 South Street
Pittsfield, Massachusetts 01201-8285

**Berkshire**

## Application For Insurance (Part 2—Medical)
## To Berkshire Life Insurance Company

**1. Full Name of Proposed Insured**     **Date of Birth**

HENRY KAMALI

**2. Your Personal Physician (If none, so state)**

Name _____ NONE

Address _____ N/A

City _____ N/A State N/A Zip N/A

How long as your personal physician? _____ N/A

When last seen? _____ N/A

Reason last seen? _____ N/A

**ANSWER ALL QUESTIONS. CIRCLE APPROPRIATE ITEMS. MARK YES OR NO WITH X. GIVE DETAILS IN SECTION 12.**

**3. During the past five years have you:**     Yes   No

a. Had any medical advice, physical exam, treatment, illness, abnormality, injury or seen a therapist, physician, counselor, psychologist, psychiatrist, chiropractor, or other health practitioner? · · · · · · · · · · · · · ·   ☒   ☐

b. Been an in-patient or an out-patient for observation, treatment, or surgery in a hospital, clinic, drug or alcohol treatment center, sanatorium, or any other health care facility? · · · · · · · · · · · · · · · · · · · · · · · · ·   ☒   ☐

c. Had a health examination(s), or any X-rays, electrocardiograms, stress tests, special heart studies, or blood or other diagnostic tests? · · · · · · · · · · · · · · · · · · · ·   ☐   ☒

**4. a.** Are you currently receiving any medical advice or treatment or taking medicine for any medical, surgical, or psychiatric condition or are you scheduled for hospitalization, surgery, or diagnostic studies? ·   ☐   ☒

b. Are you now in good health? · · · · · · · · · · · · · · · · ·   ☒   ☐

**5. Within the past 10 years have you had or been treated for:**

a. Chest pain, angina, heart attack, heart murmur, irregular heart, high blood pressure, arteriosclerosis, or other disorder of the heart or blood vessels? · · · · ·   ☐   ☒

b. Asthma, bronchitis, emphysema, pleurisy, tuberculosis, coughing of blood, or other disorder of the lungs? · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   ☐   ☒

c. Paralysis, stroke, epilepsy, convulsions, fainting or dizzy spells, recurring headaches, or other disorder of the brain or nervous system? · · · · · · · · · · · · · ·   ☐   ☒

d. Chronic fatigue, Chronic Fatigue Syndrome, Epstein-Barr virus, anxiety, stress, depression, or other mental, emotional, or psychiatric disorder?     Yes   No
· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   ☐   ☒

e. Nephritis, kidney stone? Albumin, sugar, blood or pus in the urine? Bladder or prostate trouble? Or any disorder of the male or female genital organs?   ☐   ☒

f. Ulcer, gallbladder, liver, pancreas, or intestinal disease? Hepatitis, cirrhosis, colitis, or rectal disease? · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   ☐   ☒

g. Arthritis, bursitis, gout, rheumatism, disc, sciatica, or disease or other disorder, injury, strain or sprain involving the back, neck, muscles, bones, knees, joints, ligaments? · · · · · · · · · · · · · · · · · · · · · · · · ·   ☐   ☒

h. Diabetes, thyroid, or other glandular disease? Cancer, tumor, or cyst of any kind? Anemia or other blood disease? Skin disease? Breast trouble? · · ·   ☐   ☒

i. Any disease or disorder of the ears, nose, or throat, or any significant loss of hearing? · · · · · · · · · · · ·   ☐   ☒

j. Any disease or disorder of the eyes, or any loss or impairment of vision not correctable by glasses or contact lenses? · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   ☐   ☒

**6.** Have you ever used stimulants, hallucinogens, narcotics or any controlled substance other than prescribed by a physician, or been counseled or treated for excess use of alcohol or drugs? · · · · · · · · · · · ·   ☐   ☒

**7.** Have you used tobacco in any form in the past twelve months? · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   ☐   ☒

**8.** Have you ever been treated for or had any indication of:

a. Having Acquired Immune Deficiency Syndrome (AIDS), or AIDS Related Complex (ARC)? · · · · · ·   ☐   ☒

b. Testing positively for antibodies to HIV Virus in conjunction with an application for Life, Health or Disability Insurance? · · · · · · · · · · · · · · · · · · · · · · · ·   ☐   ☒

**9.** Have you ever been treated for or had any indication of complications of pregnancy including miscarriage, preeclampsia, or caesarean section? · · · · · · · · · · · ·   ☐   N/A

Are you now pregnant? (Due date _____)   ☐   N/A

**10.** In the past 12 months have you experienced any symptoms or disorders for which you have not received a diagnosis or treatment? · · · · · · · · · · · · · · · · · · · · · · ·   ☐   ☒

17-2M (7/94) CA                                                                                   71237

| 11. | FAMILY RECORD | Age if Living | State of Health or Cause of Death | Age at Death |
|---|---|---|---|---|
| Father | | 57 | good | |
| Mother | | 55 | good. | |
| Siblings No. Alive 2 No. Dead | | 31 19 | good good | |

12. **DETAILS.** (Identify question. Include diagnoses, dates, and names and addresses of physicians and medical facilities.)

(3a) Red Retinal detachment / sep. bll. 2000 / UCSF in San Francisco / Dr. Robert S. Bhisitkul / now he is fine.

(3b) see (3a)

I understand and agree that: the statements and answers in this Part 2 are written as made by me: are full, complete and true to the best of my knowledge and belief; and that they shall be a part of the contract of insurance, if issued. I expressly waive to the extent permitted by law, on behalf of myself and any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has attended me or examined me from disclosing any knowledge or information thereby acquired, and I authorize any such disclosure to the extent as may be lawful.

Signed at _SAN MATEO. CA_ (City-State) Date _06-16-01_ (Mo-Day-Yr.)

Witness _____ Signed _____ (Proposed Insured)

Any person who knowingly, and with intent to defraud any insurance company or other person, files an application of insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and may also be subject to civil penalties.

17-2M (7/94) CA

7123

MAR-12-2003 09:12
MAR 11 2003 9:31PM                                           408-356-3003          P.02/02
                                                                                              P.2

### THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA
7 Hanover Square, New York, New York 10004

Insured **HENRY KAMALI**

Policy No.(s) **G9160.2F**

Agency Name/Code _____

Agent's Name and Code **Matthew A. Pemberton SE582**

### CHANGE APPLICATION FOR DISABILITY INCOME INSURANCE

**COMPLETE ONLY IN THE PRESENCE OF THE INSURED · PRINT** all entries in ink. Complete all appropriate parts of AP2-96 as indicated below and give the insured AP2-96 FCRA if AP2-96 AUTH is required.

1. [ ] Add, increase or change benefits. Complete Part 1 - questions 4, 5, and 6, Parts IIA, III and AP2-96 AUTH.
     If action requested is on a special age basis, preliminary inquiry to Disability Policyholder Service in addition to underwriting approval is required.

     [ ] Increase benefit period to _____
     [ ] Shorten elimination period to _____
     [ ] Add optional benefit rider(s):     [ ] Residual     [ ] Partial     [ ] COLA - _____ %.
     [ ] Add SIS benefit of $_____ and reduce monthly indemnity to $_____
     [ ] Remove SIS benefit and increase monthly indemnity to $_____
     [ ] Under buyout policy, increase monthly benefit to $_____ and/or lump sum to $_____
     [ ] Under overhead expense policy, increase monthly benefit to $_____

2. [ ] Exercise an increase option from FIO rider. Indicate amount to be exercised $_____
     Complete Part 1 - questions 5(a), 5(b) and 6, Part III and AP2-96 AUTH.
     If exercising an option from an overhead expense or buyout policy, complete the appropriate business supplement.

3. [X] Reduce or remove benefits

     [ ] Reduce monthly indemnity to $_____
     [ ] Decrease benefit period to _____
     [ ] Increase elimination period to _____
     [ ] Reduce benefits under optional benefit rider _____
     [X] Remove optional benefit rider(s) **FUTURE INCREASE OPTION (FIO) RIDER**

4. [ ] Change occupational class to _____     Complete Part 1 - question 4, Part III and AP2-96 AUTH.

5. [ ] Remove exclusionary/impairment rider or rating. Complete Part 1 - question 4, Parts IIA, III and AP2-96 AUTH.

6. [ ] Change to nonsmoker premiums. Complete Part IIA - question 8, Part III and AP2-96 AUTH.

7. [ ] Change premiums from graded to level.

8. [ ] Convert benefits on an original age basis to Form_____.

9. [ ] Other (please explain) _____

Signed at **LOS GATOS, CA** _____, this **11** day of **March** year **2003**

Signature of Insured _____

Signature of owner if other than insured. If owner is a business entity, signature and title of authorized person.

_____
Title

Servicing Agency ___SE_____

*Individual Markets Service & Administration*



3900 Burgess Place
Bethlehem PA, 18017
1-800-441-6455
Fax 610-807-8098

## ENDORSEMENT RELATING TO POLICY CHANGE (DESCRIBED BELOW)*

Please attach to and make a permanent part of Policy No. G916028-8 _____

INSURED Henry Kamali_____   Current Total Annual Premium $ 634.50_____
New Mode Premium $ 54.46_____

Effective Date of Change April 6, 2003_____

1. Basic Monthly Indemnity Changed from $_____ to $_____

2. Add, Increase or Change Benefits _____

3. Policy date changed to _____ for billing purposes only

4. Reduce or Remove Benefits Removed Future Increase Option Rider_____

5. Remove Exclusionary/Impairment Rider or Rating (See Attached)_____

6. Premium changed from Graded to Level      Yes_____      No_____

7. Change Occupational Class to_____

8. Policy Rating or Class changed to_____

9. Other Changes Made _____

This endorsement modifies the premium and/or the coverage of this policy as described above. Premiums falling due on or after the change date will be payable as indicated above.

Endorsement Date: March 28, 2003_____

VICE PRESIDENT
SELECTION, CLAIMS & INDIVIDUAL
MARKETS OPERATIONS

Endorsement

Endorsement Date: July 1, 2001

As of the Endorsement Date, the following changes are made:

The contract or certificate to which this is attached was issued in the name of Berkshire Life Insurance Company ("Berkshire Life"). That company has merged with The Guardian Life Insurance Company of America ("Guardian"). Guardian has assumed by operation of law all duties, liabilities and responsibilities under the contract or certificate as fully as though it had been issued in the name of Guardian instead of Berkshire Life. Therefore, all references in this policy and attached riders to Berkshire Life Insurance Company are hereby changed to The Guardian Life Insurance Company of America.

You should continue to use the same telephone numbers and addresses as before to send in requests, ask questions or otherwise receive service under the contract or certificate unless we have asked you to use different ones.

If the contract or certificate allowed you to vote for Berkshire Life's Board of Directors you may now vote for Guardian's Board of Directors. For details on how to vote write to our Secretary at The Guardian Life Insurance Company of America, 7 Hanover Square, New York, New York 10004-2616.

**The Guardian Life Insurance Company of America**
Administrative Office: 700 South Street Pittsfield, Massachusetts 01201

*President*                    *Secretary*

AA950-6-2001

This is a duplicate policy for policy number G9160280 originally issued  November 6, 2001.

PITTSFIELD, MASSACHUSETTS

August 11, 2017

THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA

SECRETARY

AA914-G-5-2005